EXHIBIT 1

# AFFIDAVIT

STATE OF IOWA                )
                             )
COUNTY OF WEBSTER            )

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE IN REM

I, John J. Austin, Task Force Officer of the Iowa Division of Narcotics Enforcement, (DNE), being first duly sworn, hereby depose and state as follows:

### Introduction

1. I swear to this affidavit in support of the warrant of arrest in rem the United States seeks from this Court filed with its Verified Complaint for Forfeiture in Rem for the forfeiture of $5,821.00 in United States Currency seized from Russell Junior Gentry ("Gentry") and Chelsea Funk ("Funk") as well as a 9 mm Taurus handgun, TLX50139, seized from their home in Fort Dodge, Iowa.

2. The $5,821.00 in United States Currency seized from Gentry and Funk are proceeds generated from the sale of methamphetamine by Gentry and/or money used or intended to be used to facilitate drug trafficking crimes. Gentry was convicted in *United States v. Gentry*, 20-cr-03025-001-LTS-KEM, Northern District of Iowa, of one count of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine following a serious felony drug offense. Gentry is serving 210 months on his conviction.

1

3. The 9 mm Taurus handgun, TLX50139, seized from the home of Gentry and Funk is forfeitable to the United States as a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine for which Gentry was convicted.

## Background of Affiant

4. I am employed with the Iowa Division of Narcotics Enforcement and am a duly sworn Special Federal Officer (SFO) with the Federal Bureau of investigation (FBI). I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5. I have been employed as a Special Agent (SA) with the Iowa Department of Public Safety since October, 2006 and have been assigned to the Iowa Division of Narcotics Enforcement since October, 2007. Previously, I was employed by the Aurora, Colorado, Police Department as a police officer for approximately five years. I have been involved in numerous investigations concerning controlled substances, to include methamphetamine, cocaine, marijuana, and heroin. These investigations have included purchasing controlled substances during undercover situations, handling of informants during the purchase of controlled substances, interviewing individuals involved in the distribution of controlled substances, responding to clandestine laboratories, documenting proceeds gained from the sale of drugs, and seizing drugs and drug proceeds. In connection

2

with my official law enforcement duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to 21, United States Code, Sections 841, 843, 846, and 848.

6. I have been involved in numerous aspects of narcotics trafficking investigations, including: (a) the debriefing of defendants, witnesses, and informants, as well as others that have knowledge of the distribution and transportation of controlled substances, (b) electronic surveillance, and (c) analysis of documentary and physical evidence. l have also participated in the monitoring of court-authorized wire interceptions of individuals involved in the distribution of methamphetamine, heroin, and cocaine base and have been the affiant on several prior wire intercept affidavits.

7. Based on my training, experience, and participation in other investigations involving controlled and dangerous substances, I know that large-scale narcotics traffickers maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics business. Further, I know that it is common for large-scale drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or their businesses for their ready access and to conceal from law enforcement authorities.

8. That courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

9. I know as well, based on my training and experience that persons involved in large-scale drug trafficking possess firearms to protect themselves and their families, to prevent the theft of their illegal narcotics, drug proceeds and other things of value, as well as to assure their safety in dealing with others engaged in illegal activity. I know that it is common for large-scale narcotics traffickers to possess guns on their person, in their vehicles and in their homes and businesses to enable and assist in their drug trafficking activities.

10. The information set forth in this affidavit is based on my training and experience, information received from other law enforcement officers, examination of relevant documents and Internet websites, criminal records, reports of interviews with various individuals concerning persons named in this affidavit and surveillance conducted in connection with conversations and text messages.

11. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe to be necessary to establish the foundation for an order authorizing the seizure and forfeiture of the currency and firearm seized.

12. On the basis of this familiarity, and on the basis of other information that I have reviewed and determined to be reliable, the facts contained in this affidavit show that there is probable cause to believe that the $5,821.00 in United States Currency, seized from Gentry and Funk are proceeds generated from the sale of methamphetamine by Gentry and/or money used or intended to be used to facilitate drug trafficking crimes for violations of Title 21, United States Code,

4

Sections 841, 843, 846, and 848. Further, the 9 mm Taurus handgun, TLX50139, seized from the home of Gentry and Funk is forfeitable to the United States as a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine for which Gentry was convicted.

### Drug Trafficking Investigation Giving Rise to Forfeiture

13. Since September of 2018, the FBI has been investigating a drug organization responsible for distributing large quantities of methamphetamine in the Marshalltown, Iowa and Cedar Falls/Waterloo areas of Iowa.

14. Russell Gentry was a part of this drug-trafficking organization (DTO) operating in the Northern and Southern Districts of Iowa. As a law enforcement agent, I was involved in the investigation and prosecution of Russell Junior Gentry for the distribution of methamphetamine in the Marshalltown and Fort Dodge areas of Iowa. In January of 2020 through July of 2020, Gentry conspired with others to distribute methamphetamine of at least 25 kilograms in the Northern District of Iowa and elsewhere.

15. On April 10, 2020, law enforcement in Webster County, Iowa, in the Northern District of Iowa seized a quantity of methamphetamine from a co-conspirator and executed a search warrant in Fort Dodge, Iowa. The co-conspirator indicated he had distributed methamphetamine in the Fort Dodge, Iowa area for the past five months and indicated his source for the methamphetamine was "Arkansas" who local law enforcement knew to be Gentry.

16. In this interview, the co-conspirator said he bought one-ounce quantities from Gentry for $400 per ounce and bought eight ounces per occasion from Gentry

17. On or about July 16 or 17, 2020, another co-conspirator received a shipment of methamphetamine from Texas containing seven packages of methamphetamine, each containing 16 to 18 ounces. This co-conspirator was directed to deliver one package to Gentry in Fort Dodge, Iowa. The co-conspirator met Gentry near Fort Dodge and delivered the package to Gentry, but Gentry was unable to pay for it that day. Instead, Gentry provided the title to his Mercedes Benz as either payment or collateral.

18. On July 27, 2020, law enforcement conducted a search warrant at the residence in Fort Dodge, Iowa where Gentry and his girlfriend, Chelsea Funk lived. During this July 27, 2020 search, law enforcement seized a black and orange backpack from a living room closet that contained 13 individually cellophane-wrapped bundles of methamphetamine that weighed 5,746 grams and tested 88 percent pure methamphetamine as well as a Taurus pistol and ammunition. The Taurus pistol was located in the black and orange backpack that contained the 13 bundles of methamphetamine and is the firearm the United States seeks for forfeiture in this case as a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine. Gentry was convicted of conspiracy to distribute methamphetamine.

19. The search of the living room also found **$52 cash**, a digital scale with meth residue and packing for methamphetamine as well as two empty cellophane packages with methamphetamine residue, one roll of cellophane, and glass and metal pipes were found in another bedroom.

20. A separate backpack (grey) was found in the north bedroom of the residence and contained 2 individually cellophane-wrapped bricks of methamphetamine weighing 873 grams and tested 98% pure methamphetamine. In addition, in the grey backpack was $3,607 in cash and user amounts of marijuana. In addition, law enforcement found another **$52 in cash** on an end table located also in the north bedroom. The total amount of United States currency seized in the residence of Gentry and Funk was $3711.

21. Gentry was not at his residence during the execution of the warrant but had left the premises to meet met with his probation officer as well as other law enforcement on July 27, 2020. Gentry admitted there were two pounds of methamphetamine at the house that he was holding for another. He informed officers in the past six months, he had received at least ten packages, each one containing a kilogram of methamphetamine. Gentry further informed officers that within the last couple of days, before July 27, 2020, he had received 30 to 40 pounds of methamphetamine in his home that he shared with Funk.

22. No one was present in the 719 8th Ave. North, Fort Dodge, Iowa home of Gentry and Chelsea Funk at the time of the execution of the search warrant on July 27, 2020. Funk, who is the girlfriend of Gentry and had resided at this address

for over a year, returned to 719 8th Ave. North, Fort Dodge during the execution of the warrant, driving a 2008 Mercedes Benz C35, with Iowa plates, registered in her name. Law enforcement had also received a search warrant for the Mercedes Benz and seized $2,110 from the center console.

23. Gentry was convicted in *United States v. Gentry*, 20-cr-03025-001-LTS-KEM, Northern District of Iowa of one count of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine following a serious felony drug offense. Gentry is serving 210 months on his conviction.

24. Based on my training and experience, the currency seized from Gentry and Funk are proceeds generated from the sale of methamphetamine by Gentry and/or money used or intended to be used to facilitate his further drug trafficking crimes. The currency was found in the backpack in the residence with 2 individually cellophane-wrapped bricks of methamphetamine weighing 873 grams. The other currency was found in the center console of a vehicle Funk claimed Gentry had been driving. Gentry plead guilty to conspiracy to distribute pound quantities of methamphetamine.

25. Neither Funk nor Gentry had employment or other means of support. I am aware that Funk kept money in her bank as evidenced by her need to retrieve her bank card from her residence.

26. Based on my training and experience, the firearm seized from Funk and Gentry's home is subject to forfeiture as a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine for which Gentry was convicted.

27. The Taurus firearm with ammunition was found in the black and orange backpack from a living room closet that contained 13 individually cellophane-wrapped bundles of methamphetamine that weighed 5,746 grams.

### Gentry's Claim to the Property Sought for Forfeiture

28. Gentry has made no claim to the forfeiture of this property. I am aware that as a part of his plea agreement, Gentry agreed to forfeit any interest he had in any property seized from his residence or his vehicles in Fort Dodge, Iowa as part of the July 27, 2020 search. As part of that agreement, Gentry agreed to forfeit any proceeds generated from the sale of methamphetamine by Gentry and/or money used or intended to be used to facilitate drug trafficking crimes. Also, as part of that agreement, Gentry agreed to forfeit any firearm seized on July 27, 2020, including the Taurus semi-automatic handgun TLX50139, seized from their home in Fort Dodge, Iowa and sought for forfeiture in this action.

29. Also, I am aware that Gentry waived any right to contest the forfeiture of the currency sought for forfeiture here. Gentry executed the FBI's Form FD-1138, Waiver of Timely Notice in an Administrative Forfeiture. By signing that form, Gentry agreed to waive any rights to contest the forfeiture of the $5,821.00 in United States Currency in any forfeiture proceeding.

9

### Funk's Claim to the Property Sought for Forfeiture

30. As to Chelsea Funk's claim, I am aware that she contacted the FBI on at least two different occasions, seeking return on the money only.

31. In her initial inquiry, she made what she referred to as a hardship claim to the FBI. However, she did not seek the return of all of the money seized that day, claiming only $3220. She claimed this money she seeks returned was hidden in two places in the residence she shared with Gentry, $2000 hidden under the dryer and another $1711 hidden under the dryer. (This does not add up to 3,220). Law enforcement officers did not seize any money from under a dryer.

32. Funk stated that this money she claims to have hidden was found by Gentry from her hiding place and taken by Gentry along with her car to a parole meeting that day. She provides no explanation as to how that money that was supposed to go with Gentry that day ended up at their residence when law enforcement did their search or how the other money seized from the Mercedes Benz that she was driving that day turned up in her car.

33. In addition, Funk initially claimed that only $1220 of the $2,110 seized from the center console from the 2008 Mercedes Benz C35 belonged to her, meaning the other $890 was not money that she was claiming as hers. In this claim, Funk stated the money was money she had saved from her last unemployment checks.

34. Finally, in her initial claim, FUNK stated the money was to be used for her to leave Gentry that day. She stated she was getting a U-Haul van and buying moving boxes to move that very day.

10

35. Later, Funk filed a formal claim with the FBI. She now claims the entire $5,821 as hers. In her claim, she reiterates that she was leaving Gentry, that Gentry found her money that morning that she had hidden and took her car. She is not able to explain how the money seized from the car got into that car that she drove to the residence when the search warrant was being executed. According to her story, the money taken by Gentry should have been with Gentry not located in the residence or in the car Funk was driving. Funk gives no indication about where the remaining money came other than the money that she claims to have hidden from Gentry.

36. Funk's claims to the money are contradicted by the facts and by her statements that day. I know that Funk arrived at the residence at 719 8th Ave., North, Fort Dodge, Iowa in the Mercedes Benz while the search warrant was being executed there. Gentry had not returned to the residence, having been detained at his probation meeting by law enforcement. When Funk returned, she had no U-Haul van nor boxes to indicate she was planning to move that day.

37. I am aware law enforcement officers spoke with Funk on July 27, 2020. Funk told officers she returned to the residence to pick up her bank card and that she was going swimming with the new neighbor's kids. She further stated she had been gone from the residence all day at Community Family Resources in Fort Dodge and was planning to move out several days later on August 1, 2020.

38. Funk then stated that she had proof the money in her drawer was from an insurance claim where she got $1400 back. I know no money was found in a

11

drawer and $1400 was seized either. Further, Funk made no statement about any other money in the house, hidden behind or under the dryer or in the Mercedes. She claimed Gentry came and took all the cash from the house.

39. In her discussions with law enforcement officers that day, she noted she was addicted to suboxone and was buying the narcotics through another.

40. While officers were speaking with her, Funk received a call from Gentry who was at the Webster County Law enforcement Center in Fort Dodge, Iowa. Law enforcement heard Funk tell Gentry that she begged him to stop. Funk had previously told officers that "nothing was supposed to be in my house anymore."

41. Based on my training and experience, the $5,821.00 in United States Currency seized from Gentry and Funk are proceeds generated from the sale of methamphetamine by Gentry and/or money used or intended to be used to facilitate drug trafficking crimes and are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Gentry was convicted in his federal criminal case in the Northern District of Iowa of distributing large quantities of methamphetamine. Neither Gentry nor Funk had any visible means of support

42. Based on my training and experience. the 9 mm Taurus handgun, LX50139, seized from the home of Gentry and Funk is forfeitable to the United States as a firearm used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine pursuant to 21 U.S.C. § 881(a)(11). Gentry waived his right to claim the firearm in his criminal plea and

Funk has made no claim either to the firearm as she is not able to possess a firearm.

Executed on this \_\_\_ day of September, 2023.

_____
John J. Austin, Task Force Officer
Iowa Division of Narcotics Enforcement
Special Federal Officer (SFO) -FBI

Subscribed and sworn to before me on this 11th day of September, 2023, by FBI Special Federal Officer (SFO) John J. Austin.

RICH L GEHRKE
COMMISSION NO. 75728
MY COMMISSION EXPIRES
04-02-24

Notary Public
In and for the State of Iowa

My Commission Expires:
04-02-2024